FOURTH NAT. BANK OF ST. LOUIS et al. v. ALBAUGH et al.¹

(Circuit Court of Appeals, Eighth Circuit. April 3, 1901.)

No. 1,455.

NATIONAL BANK—PERSONALTY OF DECEASED PRESIDENT—CONFLICTING CLAIMS —CONTEST WITH RECEIVER—CROSS-EXAMINATION OF PARTY—EFFECT—RIGHT TO CONTRADICT WITNESS—ADMISSIONS.

In a contest between the receiver of a national bank and creditors of its deceased president as to the right to personalty transferred by the latter to the vice president by three several bills of sale, the creditors claimed the property under two of the bills, as having been executed for their security; and their claim was supported by the vice president, who was made a party to the cause, and claimed to be the president's surety as to the creditors in question. The receiver claimed under the third and earlier bill, which he averred was made in favor of the vice president, as trustee, to secure a large sum owed the bank by the president. To sustain the claim of the creditors, the vice president was called to prove the execution and delivery of the bills on which they relied, and the attending circumstances. *Held* that, the bill on which the receiver relied having been produced and identified on the cross-examination, it was competent for the receiver to inquire concerning its purpose, without making the vice president his own witness in any such sense as to be concluded by his statements, and hence the receiver was not precluded from thereafter showing admissions by the vice president in support of the receiver's claim, though contradicting statements made on the cross-examination. *Held*, further, that the admissions made by the vice president were competent as against the creditors, because they could only claim the fund in right of the vice president, in whose favor two of the bills of sale were executed, on the principle of subrogation.

Appeal from the Circuit Court of the United States for the District of Kansas.

This is a controversy between Morton Albaugh, receiver of the First National Bank of Emporia, Kan., on the one hand, and the Fourth National Bank of St. Louis, Mo., and the First National Bank of New York and F. Harvey on the other, respecting the ownership of a certain fund now in the possession of said receiver. The controversy arises in this way:

When a receiver was appointed for the First National Bank of Emporia the two banks aforesaid (hereafter referred to as the "St. Louis Bank" and the

"New York Bank") held notes amounting to about $40,000 which were either made or indorsed by C. S. Cross and William Martindale. Harvey also held a note for $10,000 which was signed by Cross and indorsed by Martindale. Cross was president of the First National Bank of Emporia, but he committed suicide about the time that the bank was placed in the hands of a receiver. Martindale was vice president of the bank. Cross was the owner of a large amount of unincumbered live stock and personal property on what was known as his "Sunny Slope Farm," near Emporia, Kan. After the death of Cross, and on or about November 16, 1898, Martindale, as is claimed, took possession of the property, doing so, as it is also claimed, under and by virtue of the following bills of sale, which had been executed by Cross in his life-time:

"For and in consideration of one dollar and other valuable considerations, the receipt of which is hereby acknowledged, I do hereby sell, transfer, and assign to W. Martindale, as trustee, all my personal property of every kind and description, and wheresoever located, except the contents of my house where I am now living, in Emporia, Lyon county, Kansas, and excepting all my policies of life insurance. This sale does not include the notes pledged to my mother for the indebtedness I owe her, amounting to $8,375 and interest, which does not include this $4,500 Davis and Cross note. The property which I transfer to the said Martindale is partially described as follows: All my live stock, cattle, hogs, and horses now on Sunny Slope farm, Lyon county, Kansas, together with all other personal property thereon or on farms adjoining; also all notes, stocks, and bonds and mortgages, excepting, as before stated, those securing my indebtedness to my mother, Sue S. Cross. The said Martindale, as trustee, is first to protect H. C. Whitley and himself upon a certain bond in the Lyon county court. After that, he is to pay himself for any paper upon which he and I are mutually makers or indorsers. The balance, if any, to be paid the First National Bank of Emporia, Kansas, for all matters I owe them. Given under my hand and seal this 15th day of July, 1898.                                                                    C. S. Cross."

                                          "Emporia, Kansas, Nov. 15, 1898.

"For one dollar and other valuable consideration, the receipt of which is hereby acknowledged, I hereby sell, transfer, and assign unto W. Martindale and his assigns all my right, title, and interest to the following personal property, located in Emporia township, Lyon county, Kansas, and upon what is known as 'Sunny Slope Farm,' and the leased lands thereunto contiguous; all my cattle, horses, and hogs; all feed, implements, hay, grain, etc.; and all other personal property located thereon, whether specifically described hereon or not. Given under my hand and seal the date above written.

                                                     "C. S. Cross."

Prior to the execution of the aforesaid instruments, and on March 4, 1898, Cross had executed another bill of sale in favor of Martindale, which was as follows:

                    "Bill of Sale of Personal Property.

"Know all men by these presents that in consideration of one dollar and other valuable considerations, the receipt of which is hereby acknowledged, I do grant, sell, transfer, and deliver unto W. Martindale, as trustee, his heirs, executors, administrators, and assigns, the following goods and chattels, viz.: All of my personal property, of every kind and description, and wherever located, with the exception of my personal effects, insurance policies, and the contents of my house in Emporia, Lyon county, Kansas, to have and to hold, all and singular, the said goods and chattels, forever; and the said grantor hereby covenant with the said grantee that he is the lawful owner of the said goods and chattels, that they are free from all incumbrances, that he ha— good right to sell the same as aforesaid, and that he will warrant and defend the same against the lawful claims and demands of all persons whomsoever. In witness whereof, the said grantor has hereunto set his hand this 4th day of March, A. D. 1898.                                    C. S. Cross."

The receiver claimed, and such was the fact, that Cross in his lifetime had borrowed from the First National Bank of Emporia a large sum of money for

his personal use in conducting the cattle business on his Sunny Slope farm, and that the bill of sale of date March 4, 1898, was made for the purpose of securing the repayment of the money which he had thus borrowed. The two banks above mentioned, to wit, the St. Louis Bank and the New York Bank, and F. Harvey, claimed, in substance, that prior to July 18, 1898, an agreement had been entered into between William Martindale and C. S. Cross that the notes held by the three last-named parties should be paid by Cross, because the debts evidenced thereby, as between him and Martindale, were the individual debts of Cross; that, for the purpose of securing to said Martindale the performance of that agreement, the bill of sale of date July 15, 1898, and the bill of sale of November 15, 1898, were executed; and that both of said bills of sale were given in good faith by Cross to Martindale, and by him accepted, with the design on the part of both that they should operate as a chattel mortgage to secure the last-mentioned indebtedness to the two banks aforesaid and to Harvey. Owing to this controversy concerning their respective rights to the fund which might be realized from the sale of the live stock and personal property on what was known as the "Sunny Slope Farm," the parties entered into a stipulation to the effect that the property in controversy should be sold as soon as possible, and that, after the expenses of making the sale and caring for the live stock had been deducted, the net proceeds should be treated as representing the property from which it had been derived, and that the several parties interested in the fund, and claiming the same on the respective grounds heretofore stated, should interpose their respective claims, for adjudication, without being regarded as having waived any of their rights by virtue of the sale of the property. Such claims having been duly preferred by the respective parties in a form which need not be here stated in detail, and the testimony in support of the several claims having been heard and considered, the lower court sustained the contention of the receiver, and awarded the fund, then amounting to $53,396.89, to the receiver, to be disbursed by him according to law. C. S. Jobes was the receiver of the First National Bank of Emporia, who was at first appointed by the comptroller of the currency, and who entered into the aforesaid stipulation. Morton Albaugh, the present receiver, is his successor in office. From the decree in favor of the receiver, last above mentioned, the St. Louis Bank and the New York Bank and F. Harvey have appealed.

Frank Hagerman and T. F. Garver (E. W. Cunningham, on the brief), for appellants.

I. E. Lambert and J. Jay Buck (W. L. Huggins and Samuel S. Spencer, on the brief), for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The trial court appears to have found, in accordance with the contention of Albaugh, the receiver of the First National Bank of Emporia, that the bill of sale dated March 4, 1898, which is quoted above in the statement, was executed by C. S. Cross in favor of William Martindale, who at the time was vice president of the First National Bank of Emporia, as trustee for said bank, to secure the payment of a very large sum of money which Cross then owed to said bank. And the principal question which the present record presents is whether there was any legal evidence to sustain such a finding. Three disinterested witnesses testified on the trial that on a certain occasion Martindale, in whose favor all the bills of sale aforesaid were executed, had admitted or stated to them that when Cross executed and delivered to him the first bill of sale, to wit, the one dated March 4, 1898, he said to him, in substance, that he had used a large

amount of the money of the First National Bank of Emporia, of which he (Cross) was president; that he expected to use more of its money in running his Sunny Slope farm; and that he executed the bill of sale for the purpose of protecting or securing the bank. It is claimed, however, in behalf of the appellants that these admissions or statements of Martindale were improperly admitted in evidence, that they should have been excluded, and that, if excluded, there is a dearth of evidence to sustain the decree of the lower court. As bearing upon this contention, it is to be observed that when the Fourth National Bank of St. Louis interposed its claim to the fund in controversy, in the form of a bill of complaint, it made the First National Bank of New York, F. Harvey, and William Martindale parties defendant to said complaint, as well as Morton Albaugh, receiver, and F. C. Newman, who was the administrator of C. S. Cross, deceased. The New York Bank answered the complaint of the St. Louis Bank by admitting all the allegations therein contained, and joining with the complainant in its prayer for relief. Martindale, by his answer, also admitted all of the allegations of the complaint, but further averred that the notes held by the St. Louis Bank and the New York Bank represented the individual debts of Cross, he being a mere surety for their payment. Martindale accordingly joined in the prayer for relief which was made by the two banks aforesaid, and asked that the fund now in controversy, which had been realized from the sale of the stock on the Sunny Slope farm, might be appropriated to the payment of the notes held by said banks, because of the execution by Cross of the two bills of sale aforesaid, dated, respectively, July 15, 1898, and November 15, 1898. It will be seen, therefore, that the issue raised by the pleadings was whether, in virtue of the two bills of sale, Martindale was entitled to the fund in controversy for the purpose of paying his own obligations which were held by the two banks and by F. Harvey, or whether the receiver was entitled to the fund by virtue of the earlier bill of sale, dated March 4, 1898. It will also be seen that Martindale, Harvey, and the two banks claimed the fund by the same title, and that as between them there was a complete identity of interest. To sustain the issue on their part, Martindale was accordingly called as a witness, for the purpose of proving the execution and delivery of the two bills of sale upon which they relied, dated July 15, 1898, and November 15, 1898, and the circumstances attending their execution. On his cross-examination the bill of sale of March 4, 1898, was produced and identified, and the delivery thereof at the date of its execution was established. Martindale was then asked what was said by Cross contemporaneously with the delivery of the latter instrument, and in reply to such interrogatory he testified that Cross "said he wanted to use $7,500 [of the bank's money] in the Liebfried matter, and he wanted to make a mortgage or bill of sale to cover that amount." He was then asked if he had not previously stated, in the presence of various persons whose names were mentioned, that Cross said to him, in substance, when he delivered the bill of sale of March 4, 1898, that he had been using large sums of the bank's money for the benefit of his Sunny Slope farm, and that he would have to use more money for the same purpose, and that he

executed the bill of sale for the purpose of securing the bank for such advances. His reply to this question was that he did not think that he made such a statement to the persons named at the time and place stated in the cross interrogatory, but he did not otherwise deny making such a statement. The various persons referred to were subsequently called as witnesses in behalf of the receiver, each of whom testified that Martindale had made such statements to them. Their testimony was to the effect heretofore stated.

It is urged in behalf of the appellants that the receiver made Martindale his own witness by asking him on his cross-examination what Cross said with respect to the bill of sale of March 4, 1898, when the same was delivered to him; that he was accordingly bound by the statement of Martindale to the effect that it was given to secure the $7,500 used in the Liebfried matter; and that he was not entitled to contradict this statement of Martindale by showing that he had previously given an entirely different account of what was said by Cross when the bill of sale of March 4, 1898, was executed and delivered. We think that this contention on the part of learned counsel for the appellants entirely overlooks the facts to which we have heretofore adverted, namely, that Martindale was himself a party to the action, and that as between himself and the two banks, as well as between himself and F. Harvey, the other claimant, who also held a note of Cross which was indorsed by Martindale, there was a complete identity of interest. It will be observed that the bill of sale dated July 15, 1898, which is the one on which the appellants place their chief reliance, purports to have been made for the protection of Martindale; that is to say, to save him from liability on a certain bond, and "to pay himself for any paper which he and Cross had made and indorsed." Harvey and the two banks had no right to or interest in the property conveyed to Martindale which they or either of them could assert, except such as they could assert through Martindale on the principle of subrogation. If Martindale was entitled, as against the receiver, to appropriate the fund in controversy to the payment of his own obligations which were held by Harvey and the two banks, then, and not otherwise, they were entitled to insist that he should exercise this right for their benefit and advantage as well as for his own. In view of these facts, we are of opinion that it was competent for the receiver to inquire of Martindale on his cross-examination concerning the bill of sale of March 4, 1898; that by so doing the receiver did not make Martindale his own witness in any such sense as to be concluded by his statements; and that it was competent for the receiver to show afterwards, as against all of the parties who claimed adversely to him, the admissions which Martindale (a party to the suit, and the one in whom the adverse right to the fund was vested primarily) had made in the presence of several persons, to the effect that the conveyance of March 4, 1898, was made to him, as trustee for the First National Bank of Emporia, to secure whatever indebtedness Cross then owed to the bank, or might afterwards owe to it. We think that whatever objections may have been made to such testimony, even if it be conceded that they were made in such a form as to be reviewed by this court, were properly overruled.

In behalf of the receiver it is contended that the decree below may be sustained upon the ground that the trial judge found that the two bills of sale upon which the appellants rely were never delivered by Cross to Martindale in the lifetime of the former, and that they were therefore ineffective; but, without entering into an investigation or a discussion of the evidence on that point, it is sufficient to say that for the reasons above stated we conclude that there was competent evidence to sustain the finding by the trial court that the bill of sale of March 4, 1898, was made to secure all of the indebtedness of Cross to the First National Bank of Emporia, and that from and after the execution of that instrument all of his personal property, of every kind and description, except his personal effects, insurance policies, and the contents in his house in Emporia, Kan., stood pledged for that purpose. The result is that the decree below was for the right party, and the same should be affirmed. It is so ordered.